IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-478-BO-BM

RACHEL HARLESS,               )
                                )
           Plaintiff,     )
                                )       O R D E R
      v.                       )
                                )
CITY OF RALEIGH,       )
                                )
          Defendant.   )

This matter is before the Court on defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [DE 10]. Defendant has filed a response to plaintiff's motion, and plaintiff has replied. [DE 15]; [DE 18]. The matter is now ripe for ruling. For the reasons discussed below, defendant's motion is granted.

BACKGROUND

On August 20, 2024, plaintiff Rachel Harless filed a complaint against defendant City of Raleigh (the "City") alleging violations of various employment discrimination laws stemming from her role as Deputy Fire Marshal. [DE 1] ¶ 3, 23. The Deputy Fire Marshal position requires field inspections and administrative documentation among other duties. [DE 1] ¶ 51. Collectively, the Deputy Fire Marshal duties are to be performed "in both the field and in an indoor office environment." [DE 1] ¶ 52.

Harless gave birth on April 19, 2023, and was on maternity leave until July 5, 2023. [DE 1] ¶¶ 25-26. Upon her return, Harless alleges that the City did not provide her with an adequate space to pump her breast milk, causing a "significant drop in her supply which, in turn, threatened the health of her baby." [DE 1] ¶¶ 28-30. Harless' physician submitted a note on July 19, 2023, recommending that she be allowed to work from home for a couple days a week so she could

breastfeed her baby, but her work-from-home request was denied due to "equity and consistency" considerations. [DE 1] ¶¶ 31-33. On July 24, 2023, a different physician submitted a note on behalf of Harless requesting an adequate accommodation allowing her to express breastmilk privately, and again recommending she be allowed to work from home. [DE 1] ¶ 34. Two days later, the City replied that they would be upholding their decision to decline her request. [DE 1] ¶ 38.

The City eventually provided her with a satisfactory location to pump, but Harless continued to claim mistreatment based on her work-from-home request denials. [DE 1] ¶ 44. When Harless' request to work from home was again denied, she resigned on August 31, 2023. [DE 1] ¶¶ 44, 48.

Harless now alleges constructive discharge and violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Providing Urgent Maternal Protections Act ("PUMP Act"), 29 U.S.C. § 218(d), as well as Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. § 2000e *et seq.* [DE 1] ¶ 3. The City moves to dismiss under Rule 12(b)(6). [DE 10].

## DISCUSSION

I.      Standard of Review

A Rule 12(b)(6) motion to dismiss must be granted if the pleading fails to allege enough facts to state a claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading which offers "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, to survive a motion to dismiss, a complaint most contain claims that are facially plausible, which "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a Rule 12(b)(6) motion, the court "must take the facts in the light

2

most favorable to the plaintiff," but "need not accept the legal conclusions drawn from the facts" nor "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, a document attached by a defendant to its motion to dismiss may be considered by a court if "it was integral to and explicitly relied on in the complaint" and if "the plaintiffs do not challenge its authenticity." *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

### A.    *Americans with Disabilities Act Claim*

Under the ADA, covered employers may not "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Discrimination constituting a violation of the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." § 12112(b)(5)(A). A plaintiff establishes a prima facie case of failure to accommodate under the ADA by showing "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position …; and (4) that the [employer] refused to make such accommodations." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 378 n.11 (4th Cir. 2001) (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)). To qualify as disabled under the ADA, an individual must have "a physical or mental impairment that substantially limits one or more major life activities." § 12102(1)(A). A major life activity "includes the operation of a major bodily function, including but not limited to… reproductive functions." § 12102(2)(B).

Pregnancy itself is not a disability under the ADA. *O'Callaghan v. Syneos Health, Inc.*, 2024 WL 4341723, at *2 (E.D.N.C. Sep. 27, 2024) (collecting cases). However, "[a] pregnancy-related complication can count as a disability if it either causes a 'physical or mental impairment

3

that substantially limits one or more major life activities' or causes the plaintiff to be 'regarded as having such an impairment.'" *Id.* (citing 42 U.S.C. § 12102(1)). The Fourth Circuit has not decided whether pregnancy-related complications can constitute disabilities under the ADA. *Lackie v. CA North Carolina Holdings, Inc.*, 2021 WL 7081497, at *11 (E.D.N.C. Dec. 16, 2021). As examples of pregnancy-related limitations that may be considered disabilities under the ADA, the EEOC lists: pregnancy-related anemia; pregnancy-related sciatica; pregnancy-related carpal tunnel syndrome; gestational diabetes; pelvic inflammation causing severe pain and difficulty walking; and symphysis pubis dysfunction. Equal Employment Opportunity Commission, OLC Control Number EEOC-CVG-2015-1, *Enforcement Guidance on Pregnancy Discrimination and Related Issues*, at § II(A) (2015).

Here, Harless' claims she was a qualified individual under the ADA because of her "post pregnancy condition, which substantially limited and/or impaired her ability to perform everyday activities. Alternatively, Defendant perceived Ms. Harless as being disabled." [DE 1] ¶¶ 55-56. Harless does not allege facts supporting her claim that the City perceived her as being disabled and therefore this merely conclusory statement is insufficient to plausibly allege that she is a qualified individual under the ADA. Further, Harless does not plead any facts demonstrating that her "post pregnancy condition" substantially limited or impaired her ability to perform everyday activities. Considering that reproductive functions constitute major life activities, the only pleading relating to the disruption of a reproductive function is an alleged drop in breast milk supply caused by an inability to pump, which she alleges the City failed to properly accommodate. [DE 1] ¶¶ 1, 30, 32, 34-37. Even assuming, without deciding, that a drop in breast milk supply caused by an inability to pump constituted a disability under the ADA, Harless failed to plausibly allege that she had such a disability because she admits to pumping throughout her return to work. [DE 1] ¶¶ 28-

4

29, 43-44. Thus, Harless has failed to plead sufficient facts to establish she was a qualified individual, either by demonstrating that she had a physical impairment which substantially limited a major life activity or that the City perceived her as disabled. Accordingly, Harless' first cause of action, for discrimination under the ADA, is dismissed.

B.    *Providing Urgent Maternal Protections Act Claim*

The PUMP Act requires employers to provide breastfeeding employees with "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 218d(a)(2). Prior to commencing an action under the PUMP Act, employees are required to notify the employer of their failure to provide an adequate location to pump and allow the employer ten days after notice to comply with the PUMP Act's provisions. *See* § 218d(g)(1)(A)-(B). While no cases have explained how a plaintiff can satisfy the notice burden under the PUMP Act, the Fair Labor Standards Act ("FLSA"), which encompasses the PUMP Act, "contemplates some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged[.]" *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).

Harless admits that the City "satisfied the PUMP Act's requirements," and does not plead specific facts alleging notice under the PUMP Act prior to the July 24, 2023, physician note she submitted which made express reference to the provision of an appropriate place for plaintiff to pump breastmilk. Based on her complaint, there are five dates where Harless could possibly argue she complied with the notice requirements of the PUMP Act. First, when Harless returned from maternity leave on July 5, 2023. [DE 1] ¶ 26. Yet, Harless merely alleges that the City did not "immediately provider her with a place" to pump, an omission which she characterizes as a "refusal." [DE 1] ¶ 28-30. But a request and subsequent denial does not rise to the level of formality

5

contemplated for the notice requirement under FLSA and it would be unreasonable to infer notice solely from the word "refusal." The second, third, fourth, and fifth points in time where Harless may have allegedly provided adequate notice all occurred on or after July 19, 2023. *See* [DE 1] ¶ 31, 32, 34, 37. Assuming, without deciding, that the City was put on notice on or after July 19, 2023, the City nevertheless complied with the PUMP Act because Harless was provided with a satisfactory pumping location at the latest by July 26, 2023, less than ten days later. *See* [DE 10-1] at 2. Accordingly, Harless has failed to sufficiently plead facts alleging a violation of the PUMP Act and thus count two of her complaint is dismissed.

        C.      *Discrimination Claim Under Title VII and the Pregnancy Discrimination Act*

Title VII provides that it is "an unlawful employment practice for an employer … to discriminate against any individual with respect to [their] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The phrase "terms, conditions, or privileges of employment" includes "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). Further, under the PDA, the phrase "because of sex" includes "because of or on the basis of pregnancy, childbirth, or related medical conditions." § 2000e(k).

Title VII is violated when "discriminatory intimidation, ridicule, and insult" permeates the workplace and is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). Thus, to establish a Title VII claim based on a sexually hostile workplace, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's sex . . .; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of

employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (internal quotations, alterations, and citations omitted).

To rise to the level of a violation, workplace conduct must be offensive both subjectively and objectively based on a reasonable person in the plaintiff's position. *Harris*, 510 U.S. at 21-22. The objective prong "is designed to disfavor claims based on an individual plaintiff's hyper-sensitivity." *E.E.O.C. v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320, 328 (4th Cir. 2010). When considering whether an environment is sufficiently hostile or abusive, courts are directed to look at the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Decoster v. Becerra*, 119 F.4th 332, 337-38 (4th Cir. 2024) (citation omitted).

Harless alleges that the City "habitually created a hostile work environment" in part because of "[her] supervisor and HR handling a short-term situation [she] had with extreme distaste." [DE 1] ¶¶ 49-50. That short-term situation was the City's denial of Harless' request to work from home. *See* [DE 1]. However, Harless pleads no specific facts alleging "the kind of 'discriminatory intimidation, ridicule, and insult' that characterizes a hostile work environment claim." *Boyer-Liberto*, 786 F.3d at 277. Instead, Harless' claim is based on a threadbare recital of the cause of action supported by conclusory statements and is therefore insufficient. Accordingly, Harless' hostile work environment claim under Title VII is dismissed.

Harless further alleges disparate treatment but offers no allegations supporting direct evidence of intentional discrimination. [DE 1] ¶¶ 45, 70. In an employment discrimination case, a plaintiff need not "plead facts that constitute a prima facie case in order to survive a motion to

7

dismiss." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 535 U.S. 506, 510-15 (2002)). However, "a plaintiff is nonetheless 'required to allege facts to satisfy the elements of a cause of action created by [the relevant] statute' in compliance with *Iqbal*" and *Twombly. Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017). Therefore, under the proper standard, Harless' complaint must allege the "plausibility" for obtaining relief, beyond mere speculation or possibility. *McCleary-Evans v. Maryland Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 587 (4th Cir. 2015) (citing *Twombly*, 550 U.S. at 555).

Harless' sole allegation of disparate treatment is that "[t]he Fire Department has made accommodations for individuals that lawfully cannot operate under their job title due to incidents such as DWI & assault charges, so I have to wonder why special arrangements are made for these males yet, I, as a breastfeeding mother just asking for a little grace during this time so I can continue to be productive at work, am only awarded with what the law says the city must provide?" [DE 1] ¶ 45. Yet Harless does not allege specific facts establishing what "accommodations" or "special arrangements" were made for other employees, let alone alleging that they were allowed to work from home. Instead, Harless' complaint "leaves open to speculation the cause for the defendant's decision ... and the cause that she asks us to infer (*i.e.*, invidious discrimination) is not plausible in light of the 'obvious alternative explanation,'" *McCleary-Evans*, 780 F.3d at 588, that a breastfeeding mother – who can lawfully operate under her job title – is not comparable to individuals "that lawfully cannot operate under their job title," [DE 1] ¶ 45. Thus, although the Court does not apply the *McDonnell Douglas* framework as cited in the City's brief, the Court nevertheless reaches the conclusion that Harless has failed to state a plausible claim for relief as required by Federal Rule of Civil Procedure 8(a)(2) and articulated in *Iqbal* and *Twombly*.

Case 5:24-cv-00478-BO-BM    Document 22    Filed 06/25/25    Page 8 of 9

Therefore, Harless' claim for disparate treatment, along with the rest of her claims for discrimination in count three under Title VII and the PDA, are dismissed.

D.    *Constructive Discharge Claim*

To state a claim for constructive discharge, a plaintiff must plausibly allege that "he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign" and that "he actually resigned." *Green v. Brennan*, 578 U.S. 547, 555 (2016). The employer must have deliberately made the plaintiff's working conditions so intolerable such that the plaintiff was induced to resign. *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006). Here, plaintiff's allegations fall short of describing any deliberate effort by the City to make her working conditions so intolerable that plaintiff would be forced to quit. *See id.* This claim is properly dismissed.

CONCLUSION

Accordingly, defendant's motion to dismiss [DE 10] is GRANTED. Plaintiff's complaint is hereby DISMISSED in its entirety. The clerk is DIRECTED to enter judgment and close the case.

SO ORDERED, this **24** day of June 2025.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

9